WARD, Judge.
John Romano filed suit in Orleans Parish Civil District Court claiming damages for injuries he sustained while working for Southern Imperial Coatings Corporation (Southern), a manufacturer of paint. He sued numerous parties, corporate and individual, including his corporate employer’s executive officers: Henry and John Lomas-ney, Eddie Borne and their insurer, Commercial Union Insurance Company. Romano has a cause of action against the executive officers because his injury occurred before the effective date of Act 147 of 1976, (LSA-R.S. 23:1032) which immunized executive officers from an employee’s claims for personal injuries from negligent acts. His suit against the other defendants was resolved when the Trial Judge granted their motion for a directed verdict.
During the course of the trial, Romano also moved for a directed verdict against the remaining defendants, who were his corporate employer’s executive officers, and the Trial Judge granted the motion and ordered the jury to render its verdict on the issue of liability in favor of Romano and against Henry and John Lomasney, Eddie Borne, and Commercial Union Insurance Company, but he instructed the jury to decide the amount of damages to be awarded to Romano. The jury awarded $500,-000.00 in damages to Romano.
The defendants who were cast in judgment have appealed, claiming that the Trial Judge erred when he granted the plaintiff’s motion for a directed verdict because “reasonable and fair-minded men” could have disagreed whether defendants Henry and John Lomasney had violated the Child Labor Law, LSA-R.S. 23:151, et seq., because Romano had falsely stated that he was 18 in his application for employment and because his duties were not those proscribed by the Child Labor Law. They also argue that reasonable and fair-minded men could have disagreed whether defendants Henry and John Lomasney were the manufacturers of an unreasonably dangerous machine. They further claim that Romano was contributo-rily negligent, that he assumed the risk of the injury, and that the jury abused its discretion in its award of damages because the amount is speculative and, therefore, excessive.
Romano has answered their appeal, but he has not appealed either the jury’s award of damages or the directed verdict in favor of the other defendants. The insurer of Southern and its executive officers, Commercial Union, is also the workmen’s compensation insurer, and has intervened and joined in this appeal to recover the benefits which it has paid for Workmen’s Compensation.
We believe the Trial Judge was correct in granting the directed verdict against Henry and John Lomasney, Eddie Borne, and Commercial Union Insurance Company and we affirm his decision for the following reasons.
A directed verdict may be rendered when, having considered all the evidence in the light most favorable to the opposing party, the Trial Judge determines that reasonable men could not arrive at a contrary verdict. Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir.1979). To answer the question of whether the directed verdict was properly granted in the instant case, we “must view and interpret the facts *789 in the light most favorable” to the party opposing the directed verdict, in this case, the defendants. Grimes v. Stander, 394 So.2d 1332 (La.App. 1st Cir.1981).
The Trial Judge did not err when he directed a verdict in favor of Romano. The evidence, when considered in the light most favorable to defendants, clearly indicates that reasonable persons could not arrive at a verdict in favor of Henry and John Lo-masney and Eddie Borne on the issue of liability.
On the first issue, the question of whether the defendants violated the Child Labor Law, the statute in question is LSA-R.S. 23:161. It states in pertinent part:
No minor under the age of eighteen years (except those indentured as apprentices in accordance with Chapter 4 of this Title) shall be employed, permitted or suffered to work:
(1) In oiling, cleaning, or wiping machinery or shafting, or in applying belts to pulleys;
Southern breached the duty imposed by 23:161, which provides statutory protection for minors by prohibiting their being employed to clean and wipe machinery. In light of the overwhelming evidence, reasonable men could not disagree that Romano was only 17 years of age when he was employed by an executive officer who was under the supervision of Henry and John Lomasney and then assigned to clean and wipe high speed machinery. The Trial Judge correctly concluded that this activity is prohibited by LSA-R.S. 23:161. Employers have been held to breach the statutory prohibition even in those instances where the employer inadvertently employs a minor. Alexander v. Standard Oil Co. of Louisiana, 140 La. 54, 72 So. 806 (1916). The directed verdict was proper on this issue.
Moreover, even if Southern did not breach the statute because they inadvertently employed Romano when he was 17, relying upon Romano’s false statement as to his age, we believe that Southern was negligent. The evidence presented during the trial before a jury showed that Romano had first been employed by Southern when he was only 17 years old because he had falsely stated in his application for employment that his age was 18. After several months, Romano was promoted to a “batch-er” whose duty it was to scrape paint from the sides of paint mixing machines. On November 13, 1974, while he was scraping paint, his hair, fashioned in a pony tail, became entangled in the shaft of a high-speed mixing machine which ripped both his hair and scalp from his head. He was seriously injured and permanently disfigured. At the time of the accident, although Romano had been employed several months, he was still only 17 years of age.
As a matter of policy, Southern does not employ persons 17 years of age. As a matter of policy, however, neither does it ask for proof of age from applicants for employment. We believe that executive officers of a corporation have a duty to establish and enforce policies that require youthful persons who apply for employment to present proof of age before they are employed. This is especially true when they are to be employed in industrial work. The duty exists because a reasonably prudent executive officer would establish and enforce such a policy. Because there is statutory prohibition against 17 year olds doing particular jobs, we feel there is a corresponding duty imposed on employers to require proof of age to insure that an employee is 18, before he is assigned to work activities which are prohibited to those under 18. Common experience shows that there is a foreseeable risk known to reasonable men that underage persons seeking employment will falsify their age on the application. That same experience shows that when proof of age is not required, underaged persons may be injured when they are employed to perform duties which are hazardous to them and which they are prohibited by statute from performing. Moreover, the legislature, when it enacted LSA-R.S. 23:161, recognized that, as a matter of policy, there is a foreseeable risk of injury to a 17 year old who is employed to clean machinery. In summary, we believe that there is a duty to require proof of age *790 from youthful applicants in order to avoid the obvious risk of employing those who are declared by statute, too young to do hazardous work. This duty was owed to Romano because there was clearly a foreseeable risk of injury to him, an inexperienced youth. The breach of that duty was the cause in fact of Romano’s injury. Romano, immature and inherently indifferent to obvious dangers, was incompetent to safely perform the work required of him.
We also believe a directed verdict was correct because the executive officers of Southern, and particularly Borne, breached a duty owed to Romano and others to provide a safe work environment. In the instant case, Eddie Borne, employed by Southern as a supervisor to oversee paint mixing operations, was the immediate supervisor of Romano. He was instrumental in promoting Romano to the job of “batch-er”. As a supervisor, he had a duty to insure that there were safe work procedures for Romano and others. He breached this duty when he required Romano, while working under his supervision, to scrape paint from the sides of a vat where an unguarded shaft spun blades at a high rate of speed. To perform his job, Romano was required to lean into the vat, as the shaft spun, with his head perilously close to the unguarded shaft.
We also believe the Trial Judge was correct in granting the directed verdict because Henry and John Lomasney designed and manufactured an inherently dangerous machine. Defendants claim this issue should have been given to the jury because “reasonable and fair-minded men” could have found in favor of Henry and John Lomasney on this question. They support this claim by arguing that the machinery itself was not unreasonably or inherently dangerous and that the procedure for using the machine was not dangerous.
The evidence most favorable to defendants on the question of whether the machine was inherently dangerous merely explains the design and why the dangerousness could not be reduced. The testimony of Henry Lomasney, an executive officer who designed the machine, indicated that after an earlier injury to an employee by a similar machine with an open shaft, he looked at other machines in the industry to “beef up certain areas.” He testified that other machines which he viewed were not equipped with a shaft guard. There was other testimony that the presence of a shaft guard on this kind of high speed dissolver would create a fire hazard and that the machine, as designed and manufactured, represented the state of the art and practice of the industry at the time. The overwhelming contrary testimony, however, was that for years open shafts have been considered highly dangerous and that some machines have been designed with guards. Others have been designed with automatic wiper blades which scrape the vats. We believe reasonable men could not disagree. This high speed, open shaft, small vat machine which requires manual cleaning is dangerous. The Trial Court did not err.
In addition, the defendants claim that there was sufficient evidence in the record to conclude that Romano was contributorily negligent. They claim that the Trial Judge erred when he made an evaluation of credibility in his ruling on the motion for a directed verdict. In that ruling, he stated:
Additionally, the Court finds there is no evidence of plaintiffs fault. Although the evidence conflicts on exactly what instructions were given to the plaintiff, there is no evidence that he did not follow the instructions except the testimony of Frank Self, who could not possibly be believed in light of the overwhelming testimony of witnesses for both plaintiff and defendants that the plaintiff did his job as instructed....
While it is true that when witnesses give conflicting testimony, the Trial Judge is prohibited from rendering a directed verdict based on his evaluation of their credibility, Campbell, supra, a fair reading of these comments shows that the Trial Judge did not rely on a credibility evaluation alone; he relied on the overwhelmingly conclusive evidence that John Romano had followed the instructions which he had been given for the use of the machine.
*791 Defendants claim that there was other evidence to show that Romano was at fault because he failed to follow instructions to cut his hair and that the issue should go to the jury for this reason. However, although the defendants had warned Romano and their other employees against having long hair, the record clearly reflects that Romano was not the only employee with long hair and that he had also been advised to keep his hair in a pony tail and to wear a hard hat. Hence, his refusal to cut his hair was condoned by his supervisors, and he was not at fault. Moreover, where a minor is employed to perform work prohibited to them by statute, contributory negligence is not a defense. In Boyer v. Johnson, 360 So.2d 1164 (La.1978), it was stated:
[Wjhere the purpose of a statute is to protect the minor against the risk of his own negligence (as here, where the statute absolutely prohibits the employment of a minor below a certain age in work connected with power-driven machinery or in driving a commercial vehicle), the general rule is that the minor’s contributory negligence or assumption of risk will not defeat recovery, (citations omitted)
We hold this rule is applicable even when, as here, the employer relies upon the minor’s false statements of his age.
Finally, the claim that the award includes speculative damages appears to be based on comments from the extensive testimony of a plastic surgeon, Dr. Ryan, who discussed the possibility of future surgery, the possible number of surgical procedures, the likelihood of whether he would even recommend further surgery, and possible costs. In his testimony, he was equivocal about whether he would ever recommend future, fairly experimental, surgical procedures for Romano which he characterized as fairly experimental. The psychiatric testimony was also equivocal, if not negative, on the question of whether future surgery would ever be advisable for John Romano.
In spite of this, the record contains evidence of extremely severe injuries. His scalp was ripped from his eyebrows to the back of his neck. There are no nerves in the skin covering his head. He is more susceptible to injury and disease. He is more susceptible to cancer. He has been suicidal, seriously depressed, and his normal adolescent and young adult development have been seriously impaired. His potential earning capacity has been reduced because of his altered appearance. He has suffered the taunts of small children and the curious stares of strangers. The record is filled with surgical, psychiatric, and lay testimony about the horrors which Romano has suffered, including multiple hospitalizations and surgical procedures.
Since future, ameliorating, cosmetic surgery is a remote and dubious possibility (and not advisable at this time), the obvious conclusion is that the jury intended to make an award in damages to compensate Romano for what he has already suffered and what he undoubtedly will suffer. We conclude that the award does not include speculative damages and that there is no basis to say that the award is excessive, much less to say that the jury abused its discretion in its award.
We therefore affirm the Trial Court’s finding of liability against the defendants and the award of $500,000.00 to John Romano. We also affirm that portion of the judgment awarding $27,023.87 to Commercial Union Insurance Company for worker’s compensation benefits paid to John Romano.