ROBERT M. MURPHY, Judge.
1 gPIaintiffs-appellants, Gail and Warren Baudy, appeal the trial court’s judgment granting the motion for directed verdict filed by defendants-appellees, TBS, LLC and Travelers Indemnity Company of Connecticut. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
On December 8, 2011, plaintiffs Gail and Warren Baudy filed suit to recover damages for injuries sustained by Gail Baudy when she fell off of a raised sidewalk and curb at a Winn-Dixie store in Destrehan, Louisiana, as she stepped off of the sidewalk and onto the driveway of the shopping center. Plaintiffs named as defendants, Winn-Dixie Montgomery, LLC, TBS, LLC (the owner of the shopping center leased by Winn-Dixie), and Travelers Indemnity Company of Connecticut (the liability insurer of TBS, LLC). Plaintiffs alleged that the slope in the driveway located at the bottom of the sidewalk and curb, caused her ankle to roll as she stepped off of the curb and onto the driveway. She claimed that the | ssloped driveway created a dangerous condition, for which, defendants are liable due to their failure to prevent the unreasonably dangerous condition from causing injury, and their failure to warn of the dangerous condition. Mrs. Baudy sustained a broken *128 right arm and a radial neck fracture, as a result of the incident.
Subsequently, plaintiffs filed a motion to voluntarily dismiss Winn-Dixie Montgomery, LLC from the lawsuit, which was granted by the trial court on April 10, 2012. As such, the case proceeded against TBS, LLC and Travelers Indemnity Company of Connecticut (hereinafter collectively referred to as “defendants”) as the only remaining defendants.
The matter was set for a jury trial, commencing on March 19, 2013. The parties filed a joint pre-trial statement on October 31, 2012, wherein they provided their respective witness lists. At that time, plaintiffs listed an unnamed St. Charles Parish code enforcement officer, but did not identify an expert witness regarding the issue of liability. Defendants listed William Argus, an architect, to testify as an expert. The trial court ordered the parties to file a final witness list twenty days before trial, or on February 27, 2013. Defendants filed their final witness list at that time, naming Argus, but plaintiffs did not file a final witness list of their own. On March 8, 2013, plaintiffs filed an “Amended Pre-Trial Statement,” naming Walter Antin as an expert in architecture. Defendants subsequently filed a motion to strike plaintiffs proposed expert witness based upon plaintiffs’ failure to timely disclose their expert in accordance with the court’s deadlines, and their failure to provide an expert report regarding his opinions in the matter. The trial court indicated that it was inclined to grant defendants’ motion to strike, but deferred ruling on the motion until trial.[1]
|40n the morning of trial, March 19, 2013, defense counsel informed the court that plaintiffs’ counsel intended to call the defense’s liability expert, Argus, during plaintiffs’ case-in-ehief. As a result, the parties held a bench conference with the trial judge regarding taking Argus out of turn during plaintiffs’ case-in-chief. During the conference, defense counsel voiced concerns about plaintiffs’ counsel possibly attempting to impeach Argus before the defense had laid a foundation on direct examination, and plaintiffs’ counsel stated that he wanted Argus’ testimony to be included within plaintiffs’ case-in-chief for purposes of any motion for directed verdict filed by defendants. After a discussion regarding the order in which each party would question Argus, the parties agreed on the record that during plaintiffs’ casein-chief, defendants would first conduct a direct examination of Argus, followed by plaintiffs’ cross-examination, and then defendants’ re-direct examination.
At trial, plaintiffs called as witnesses Mrs. Baudy, Mr. Baudy, Mrs. Baudy’s sister, Dr. Melissa Gorman and Argus. Mrs. Baudy testified that she shopped at this particular Winn-Dixie two to three times a week, prior to her fall at issue. She explained that on the day of her fall, she was walking towards the Winn-Dixie on the sidewalk and noticed a crowd forming around a table of girls selling Girl Scout cookies on the sidewalk near the entrance to the store. In an effort to avoid the crowd, she stepped off of the sidewalk/curb and onto the driveway. As she stepped off of the sidewalk/curb, she stated that the driveway appeared to be level and not sloped. However, once she stepped onto the driveway, the slope of the driveway caused her ankle to roll and she fell to the ground. On cross-examination, defendants confronted Mrs. Baudy with her prior deposition testimony wherein she stated that the unevenness of the curb caused her to *129 fall. The testimony of Mrs. Baudy’s treating physician, Dr. Melissa Gorman, was offered by deposition. Dr. | RGorman testified that Mrs. Baudy informed her that she injured herself when she slipped and fell in water on the floor of the Winn-Dixie.
In accordance with the parties’ agreement, Argus took the stand during plaintiffs’ case-in-chief. He testified that he was retained by defendants to determine whether any unreasonably dangerous condition existed at the Winn-Dixie. He testified that the maximum allowable height for a curb is seven inches, and that the curb in the area where Mrs. Baudy indicated she fell measured below that limit, at 6⅜ inches. He also testified that the sidewalk and the driveway measured within code limits for slope. Specifically, he measured the cross slope of the driveway, which runs parallel to the curb, at two percent, which complies with code limits. He explained that driveways need to be sloped to some degree so that rainfall flows away from the curb. Argus looked for uneven surfaces in the area of Mrs. Baudy’s fall, but did not find any. Specifically, he explained to the jury that he closed his eyes and stepped off of the curb onto the driveway, but did not find any unevenness. Argus testified that he did not find any unreasonably dangerous conditions in the area where Mrs. Baudy’s fall occurred.
At the conclusion of Argus’ testimony, plaintiffs rested their case and the trial court dismissed the jury for the day. On the following morning, defendants moved for a directed verdict, citing plaintiffs’ failure to establish the existence of an unreasonably dangerous condition in defendants’ property, or that defendants knew, or should have known, of an unreasonably dangerous condition. Plaintiffs opposed defendants’ motion for directed verdict on the merits, but they did not make any formal objections to the motion. The trial court granted defendants’ motion, finding that plaintiffs failed to present any evidence of a defect, or of an unreasonable risk of harm, and that the slope of the driveway was open and obvious. Plaintiffs now appeal.
^ASSIGNMENTS OF ERROR
On appeal, plaintiffs allege the following assignments of error:
1. The trial court erred procedurally in granting defendants’ motion for directed verdict.
2. The trial court erred substantively in granting defendants’ motion for directed verdict.
3. The trial court erred in depriving plaintiffs of their right to a jury trial.
LAW AND DISCUSSION
In their first assignment of error, plaintiffs contend that the trial court’s grant of defendants’ motion for directed verdict was procedurally improper because it was not made at the appropriate time. Specifically, plaintiffs contend that because defendants’ expert, Argus, testified during plaintiffs’ case-in-chief, the trial court erred procedurally in granting defendants’ motion for directed verdict after plaintiffs rested their case-in-chief, but before defendants rested their case-in-chief. We need not address the merits of this assertion, however, because this question is not properly before this court.
It is well-settled law that failure to make formal objections to a ruling of the trial judge results in a waiver of a party’s right to urge those objections as error on appeal. Nunnery v. City of Kenner, 08-1298 (La.App. 5 Cir. 5/12/09), 17 So.3d 411, 415, citing La. C.C.P. art. 1635. Our review of the record reveals that plaintiffs did not *130 object to defendants’ motion for directed verdict or to the trial court’s ruling thereon, on the procedural ground that the motion was untimely. In fact, the record shows that the reason Argus was called out of turn was due to the fact that ■plaintiffs wanted Argus to testify during their case-in-chief. Moreover, during the bench conference with the court, counsel for plaintiffs stated: “My only thought is if he were to make a motion for directed verdict, I want the testimony of|7his guy to be included as part of my case.” Thus, not only did plaintiffs fail to object to the timeliness of defendants’ motion for directed verdict and/or the trial court’s ruling thereon, they affirmatively sought to have Argus called out of turn during their casein-chief. “In the absence of objection, the trial court is afforded no opportunity to prevent or correct the alleged error.” Bernard v. Ferrellgas, Inc., 96-621 (La. App. 3 Cir. 2/5/97), 689 So.2d 554, 557 (citation omitted). Because plaintiffs made no objection at trial to the timeliness of defendants’ motion for directed verdict or to the trial court’s ruling thereon, the alleged error is waived and not properly before this Court on appeal.
Nevertheless, under La. C.C.P. art. 1810, a motion for directed verdict is appropriately made at the close of the evidence offered by the opposing party. See also Dugas v. Automotive Cas. Ins. Co., 98-807 (La.App. 5 Cir. 2/10/99), 729 So.2d 25, 28; Conrad v. Doe, 95-518 (La. App. 5 Cir. 11/28/95), 665 So.2d 542, 546, unit denied, 95-3092 (La.2/16/96), 667 So.2d 1058. Here, there is no dispute that defendants moved for a directed verdict after plaintiffs rested their case. Plaintiffs cite Melody v. Wendy’s of New Orleans, Inc., 95-913 (La.App. 5 Cir. 4/16/96), 673 So.2d 1094, writ denied, 96-1249 (La.6/21/96), 675 So.2d 1088, abrogated on other grounds by Porteous v. St. Ann’s Cafe & Deli, 97-0837 (La.5/29/98), 713 So.2d 454, in support of their claim that the trial court erred in granting defendants’ motion for directed verdict after plaintiffs rested their case, but before defendants rested their case. In Melody, this Court held that once a defense witness is taken out of turn, a motion for involuntary dismissal can only be entertained at the close of all the evidence. Id. at 1097. However, we note that the defendant’s witness in Melody was called out of turn during the plaintiffs case-in-chief at the defendant’s request. Id. We find that Me-lady is distinguishable from the instant case because defendants’ expert, Argus, was called out of turn during [ Splaintiffs’ case-in-chief at plaintiffs’ request. Our review of the record clearly shows that plaintiffs rested their case-in-chief after Argus’ testimony, at which point, defendants properly moved for a directed verdict under La. C.C.P. art. 1810. Accordingly, this assignment is without merit.
In their second assignment of error, plaintiffs assert that the trial court erred substantively in granting defendants’ motion for directed verdict because reasonable persons could have reached a contrary verdict based on the evidence submitted. La. C.C.P. art. 1810 provides as follows, with respect to motions for directed verdict:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a direct *131 ed verdict is effective without any assent of the jury.
A motion for a directed verdict is a procedural device available in trials by jury with an eye toward judicial economy. Reed v. Columbia/HCA Info. Sys., Inc., 00-1884 (La.App. 5 Cir. 4/11/01), 786 So.2d 142, 145, writ denied, 01-1384 (La.6/22/01), 794 So.2d 796. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the mov-ant’s opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary result. Id. However, if there is evidence produced in opposition to the motion that has such quality and weight that reasonable and fair-minded men, exercising impartial judgment, might reach different conclusions, then the motion should be denied and the case should be submitted to the jury. Id.
The trial court has much discretion in determining whether or not a motion for a directed verdict should be granted. Joseph v. Cannon, 609 So.2d 838, 843 (La.App. 5 Cir.1992), writ denied, 623 So.2d 1330 (La.1993), cert. denied, 510 U.S. 1097, 114 S.Ct. 935, 127 L.Ed.2d 226 (1994). The standard of review for the appellate court is whether, viewing the evidence submitted, reasonable people could not reach a contrary result. Reed, supra at 146. Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law related to the claims. Id.
In this case, plaintiffs sought to establish defendants’ liability for her injuries due to the existence of an unreasonably dangerous condition or defect in defendants’ property. Under La. C.C. art. 2317.1, “[t]he owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.” Thus, to prove liability for an unreasonably dangerous defect, a plaintiff has the burden to show that the thing was in the custodian’s custody or control, it had a vice or defect that presented an unreasonable risk of harm, the defendant knew or should have known of the unreasonable risk of harm, and that the damage was caused by the defect. Babino v. Jefferson Transit, 12-468 (La.App. 5 Cir. 2/21/13), 110 So.3d 1123, 1126, citing Jeansonne v. S. Cent. Bell Tel. Co., 08-568 (La.App. 5 Cir. 1/13/09), 8 So.3d 613, 619. Not every defect gives rise to liability. Id., citing Monson v. Travelers Property, 06-921 (La. App. 5 Cir. 4/24/07), 955 So.2d 758, 761. The defect must be of such a nature to constitute a dangerous condition, which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Id. Moreover, the hpfact that a pedestrian fell does not elevate automatically the condition of a street to that of an unreasonably dangerous defect. Id.
In granting defendants’ motion for directed verdict, the trial court stated:
In this case, plaintiff has not presented evidence of a defect or unreasonable risk of harm. The slope is open and obvious. The condition of the walkway and the slope is open and obvious. Plaintiff admits she has been there numerous times before and entered through the front, the same entrance, even though she said it was from a different place. But I saw *132 no evidence, and for that reason, for the first time in my career as a judge, I’m going to grant the directed verdict.
In reviewing the propriety of the directed verdict in light of the substantive law applicable to plaintiffs’ claims, we find no error in the trial court’s ruling granting defendants’ motion for directed verdict. Plaintiffs simply did not meet their burden of proof. Mrs. Baudy was the only person who testified for plaintiffs regarding the reason for her fall and the alleged unreasonably dangerous condition of the sloped driveway. Plaintiffs presented no additional evidence, expert or lay testimony, to support their claim that defendants’ property was defective. Conversely, defendants offered testimony from their expert, Argus, establishing that the curb, sidewalk and driveway of defendants’ property all measured within code limits, and that no unreasonably dangerous or defective conditions existed in the area of Mrs. Baudy’s fall. Considering all the evidence submitted at trial, we find that there was no evidence of a dangerous condition upon which reasonable people could reach a contrary result and find defendants liable for Mrs. Baudy’s injuries. Accordingly, we find no error in the trial court’s grant of defendants’ motion for directed verdict.
In their third assignment of error, plaintiffs contend that the trial court erred in depriving plaintiffs of their right to a jury trial when it granted defendants’ motion for directed verdict. Plaintiffs assert the same arguments in support of this | n assignment of error that they have asserted in support of their second assignment of error. Because we have already addressed those arguments in our analysis of plaintiffs’ second assignment of error and found them to be without merit, we find this assignment of error to be moot.
CONCLUSION
For the foregoing reasons, the judgment of the trial court granting defendants’ motion for directed verdict is affirmed.

AFFIRMED.

. Because plaintiffs did not make an attempt to call their proposed expert to testify at trial, the trial court did not rule on defendants' motion to strike plaintiffs’ expert.