SUSAN M. CHEHARDY, Chief Judge.
| .¿Defendants, The Gray Insurance Company, Grand Isle Shipyard, Inc., and Duane Smith,[1] appeal the district court’s judgment finding them liable to plaintiff, Rorilyn Prejeant, for injuries she sustained in an automobile collision and the award of general damages therefor. For the reasons that follow, we affirm the judgment of the district court.
FACTS AND PROCEDURAL HISTORY
On October 2, 2012, Ms. Prejeant filed suit against defendants seeking damages for injuries she sustained in an automobile collision. At a bench trial on September 15, 2014, the two parties described differing versions of the incident.
Ms. Prejeant testified that around 4:00 p.m. on October 20, 2011, while driving a 2003 Chevrolet Impala, she made a right turn onto the Westbank Expressway from Avenue E in Westwego. Since her destination was on the other side of the expressway, she intended to cross the three lanes of the divided expressway and merge into the left lane before making a left turn and crossing the ^median to the other side. As she made a right turn onto the expressway, she remained momentarily in the right lane before merging into the middle lane. While in this lane, Ms. Pre-jeant approached a red light at the intersection of the expressway and Avenue D. As she came to a stop at this intersection in the middle lane, Ms. Prejeant noticed defendants’, truck, driven by Duane Smith, approaching from the rear also in the middle lane. The truck came to a stop behind her. Two vehicles were stopped in front of her in the middle lane at the intersection. Vehicles were beside her in the left lane. She intended to get into the left lane to make a left turn onto Avenue D when the light turned green. But when the light turned green, the first of the two vehicles in front of Ms. Prejeant pulled off and the second vehicle had not pulled off when Ms. Prejeant noticed defendants’ truck beginning to move forward. She honked her horn several times, but the truck collided with her vehicle, knocking out her driver’s side taillight and denting and scuffing her rear bumper. This damage was estimated at approximately $5,500.00.
Mr. Smith testified to a different version of events. A licensed commercial truck driver since 1998, Mr. Smith stated that on the afternoon of October 20, 2011 he was driving an International truck with an extended hood when he stopped at a red *707 light in the middle lane of the Westbank Expressway at the intersection with Avenue D. The vehicle directly in front of him was a pickup truck, which he had been proceeding behind for “two or three lights.” There was one car stopped in front of the pickup at the light. When the light turned green, Mr. Smith observed the pickup start moving, so he let off the clutch, but as soon as he did, he explained:
It’s like my truck was knocked out of gear ... because it didn’t move.... So I put it back in gear and ... proceeded to go on and then there was another impact. That’s when I realized [there was] a car in front of me. Now, where that car came from, I have no idea [bejcause she wasn’t in front of me when we reached that light.
14Mr. Smith exited his truck and proceeded to check on Ms. Prejeant, When he asked where she had come from, he testified that she told him she was in the right lane and she had merged into the middle lane in front of him, intending to proceed all the way to the left lane, which she was unable to do on account of the traffic in the left lane. Mr. Smith stated that he never saw Ms. Prejeant’s vehicle prior to the collision.
A police officer with the Westwego Police Department reported to the scene and spoke with both parties before compiling an accident report. At trial, Ms. Prejeant testified that she disagreed with the version of the incident as described in the officer’s report. The report states:
Driver of Vehicle 1 advised while traveling westbound on [Westbank Expressway] she changed lanes which resulted in collision with Driver of Vehicle 2. Driver of . Vehicle 2 advised while he was traveling westbound on [Westbank Expressway] Driver, of Vehicle 1 pulled out to cross lanes and than [sic] came to an abrupt stop on the roadway. Driver of Vehicle 2 advised he could not see Driver of Vehicle 1 when she rapidly changed lanes.
Though “shaken up” immediately after the collision, Ms. Prejeant did not experience any physical pain and so declined to seek medical attention. However, she experienced soreness the next day. As this did not dissipate over the next few days, Ms. Prejeant sought medical care, reporting headaches, as well as pain in her back, neck, and shoulders. ' Nevertheless, Ms. Prejeant’s daily activities were 'not affected. Because she was pregnant at the time, she was referred to an OB/GYN, who assessed the health of the fetus but did not treat Ms. Prejeant’s other symptoms. It was not until after contacting an attorney that Ms. Prejeant first visited a chiropractor on January 12, 2012, where she reported headaches, as well as pain in her spine, neck, and shoulders.
lfiThe record reflects that Ms. Prejeant underwent twenty-seven sessions of chiropractic treatment between January 17 and October 15, 2012 for her soft tissue injuries. The frequency and regularity of these sessions varied. In January, Ms. Prejeant underwent three treatment sessions, in February: two, March: six, April: four, May: five, June: one, July: four, August: none, September: none, October: two.[2] In her sessions from January 17 through June 5, Ms. Prejeant received massage' therapy and application of heat packs. On June 14, when Ms. Prejeant was approximately eight months pregnant, she slipped and fell, injuring her “back *708 side,” which she described as unrelated to the injuries she sustained in the collision. Ms. Prejeant then gave birth to a healthy baby boy on June 19 without any complicar tions. - On July 3, during her first session back after giving birth, in addition to her usual treatment, Ms. Prejeant received electrical stimulation treatment, which she received for the remainder of her sessions. An MRI of her thoracic spine region conducted on October 1 identified “no significant abnormalities;” and Ms. Prejeant underwent her last session on October 15, 2012. The medical records reflect the cost of the chiropractic treatment as $3,605.00 and the cost of the MRI as $1,400.00.
Following the conclusion of trial, the district court took the matter under advisement and issued its judgment on September 17, 2014. The court found defendants liable to plaintiff in the amounts of $16,000.00 for general damages and $5,105.00 for special damages. Regarding liability, the court stated in its written reasons for judgment: “[Duane] Smith was in the course and scope of his employment when he failed to keep a proper lookout and rear ended the plaintiffs vehicle. [Duane] Smith’s negligence was the sole cause of the accident.” The court explained that the award of $16,000.00 for general damages was to | ^¡compensate plaintiff for pain and suffering during eight months of “conservative” chiropractic treatment at $2,000.00 per month. The court explained the special damages award was comprised of $3,605.00 for Ms. Pre-jeant’s chiropractic treatment and $1,400.00 for her MRI.[3]
Defendants sought and were granted a suspensive appeal on October 30, 2014.
ASSIGNMENTS OF ERROR
On appeal defendants raise two assignments of error:
(1) The trial court committed legal error, or was manifestly erroneous, in disregarding uncontroverted physical evidence which refuted 'the testimony of the plaintiff as to how the incident occurred, and completely supported the testimony of the de- - fendant as to how the incident happened, and how the plaintiff told the investigating police officer how the incident at issue happened in allocating fault for causing the incident solely to the defendant Duane Smith.
(2) The trial court abused its discretion, or failed to properly exercise its discretion, in awarding the plaintiff general damages calculated using a “cookie cutter” mathematical formula, and not based on the specific facts of this case.
DISCUSSION
In defendants’ first assignment of error, they argue' that the district court erred in finding in favor of Ms. Prejeant when the physical evidence, i.e., vehicle damage, corroborates Mr. Smith’s version of the incident- and contradicts Ms. Prejeant’s. Therefore, defendants contend that the district court’s reliance on Ms. Prejeant’s uncorroborated and contradicted testimony constitutes reversible error.
A determination of negligence or fault is a factual determination. Mai Vu v. Artis, 09-637 (La.App. 5 Cir. 12/29/09), 30 So.3d 140, 143. A court of appeal may not set aside a district court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESGO, 549 So.2d 840, 844 (La.1989). This manifest error-clearly wrong standard of review is based upon recogni *709 tion of the trier-of-fact’s better capacity to evaluate live witnesses, as compared with the appellate court’s access only to a cold record, as well as the proper allocation of trial and appellate functions between the respective courts. Mai Vu, supra. Therefore, where these, is .conflict in the testimony, reasonable evaluations of credibility and reasonable , inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell, 549 So.2d at 844.
In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test: (1) the appellate court must find that a reasonable factual basis does not exist in the record for the finding; and (2) the appellate court must further determine that- the record establishes that the finding is clearly wrong. Mai Vu, supra.
In determining whether the trier of fact was clearly wrong 'in its allocation of fault, an appellate court is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), including: (1) whether the conduct was inadvertent or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actors; and (5) any extenuating factors which might require the actor to proceed with haste, without proper thought. Tamayo v. Am. Nat’l Gen. Ins. Co., 14-130 (La.App. 5 Cir. 9/24/14), 150 So.3d 459, 466.
In a rear-end collision, there is a well-established presumption that the following motorist breached the standard of care set forth in La. R.S. 32:81[4] and 18was negligent. Mai Vu, 30 So.3d at 144. However, this presumption is rebutted with proof that the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid. Id. For instance, a driver who. changes lanes without first determining that the move can be completed safely and then is struck from the rear by a following car cannot rely on the rear-end collision presumption to shift the burden to the following driver. Id. Indeed, the law places a greater burden of care on a motorist changing lanes than on a motorist proceeding at a lawful rate of speed in a marked lane. Id. When there is a lane change immediately preceding an accident, the burden is on the motorist changing lanes to show that she first ascertained that the movement was being made safely. Id.; see La. R.S. 32:79(1) (“A vehicle shall be driven as nearly as practicable entirely'within a single lane and shall not be moved from Such lane until the driver has first ascertained that such movement can be made with safety.”).
In the present case,’ there was conflicting testimony regarding when Ms. Pre-jeant changed lanes prior to the collision. She testified that she had merged into the middle lane shortly after turning onto the Westbank Expressway and was at a complete stop in that lane when Mr. Smith collided with her from the rear. Conversely, Mr. Smith testified that he never saw Ms. Prejeant’s vehicle prior to the collision, leading him to assume that she had merged into the middle lane while he was stopped at the red light.
The police report - does not help to resolve this conflicting testimony as the report itself is internally inconsistent. It states that Mr. Smith could not see Ms. Prejeant, but also states that Mr. Smith *710 observed Ms. Prejeant changing lanes and coming to an abrupt stop.
Additionally, we disagree with defendants’ contention that the physical evidence supports only Mr. Smith’s version of the collision. While the damage |9sustained to Ms. Prejeant’s vehicle is consistent with Mr. Smith’s version, it is not inconsistent with Ms. Prejeant’s. Damage to the driver’s side taillight and the rear bumper is consistent with the rear-end collision as described by Ms. Prejeant. This physical evidence does not conclusively support one version to the exclusion of the other.
When considering the forgoing conflicting evidence, the district court evidently gave more credence to Ms. Prejeant’s version of events and rejected Mr. Smith’s. In so doing, the court found that Mr. Smith, as the following motorist, had not rebutted the presumption of his negligence with proof that Ms. Prejeant negligently created a hazard which he could not reasonably avoid. Considering the testimony and evidence presented at trial, we find that the record contains a reasonable factual basis for this finding and does not establish that this finding is clearly wrong.
This assignment of error is without merit.
In defendants’ second assignment of error, they argue that the district court abused its discretion in awarding general damages pursuant to a “cookie cutter” calculation method. Defendants contend that the irregularity of Ms. Prejeant’s chiropractic treatments reflects inconsistent pain and suffering, which is not accounted for by the generic award of $2,000.00 per month. Defendants submit that plaintiffs award of general damages, if she is entitled to it, should be reduced from $16,000.00 to $2,500.00.
In Louisiana, delictual actions are governed by La. C.C. art. 2315, which states that “[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.” Thus, under La. C.C. art. 2315, a tortfea-sor must compensate a tort victim for all of the damages occasioned by his act. “Damages” refers to “pecuniary compensation, recompense, or satisfaction for 11(lan injury sustained.” Willis v. Noble Drilling, Inc., 11-598 (La.App. 5 Cir. 11/13/12), 105 So.3d 828, 843. These compensatory damages are designed to place the plaintiff in the position in which he would have been if the tort had not been committed. Id. at 843-44.
Compensatory damages are divided into the broad categories of special and general damages. Willis, 105 So.3d at 844. At issue here are general damages, which are inherently speculative and cannot be calculated with mathematical certainty. Id. They include mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in monetary terms. Id. at 845. Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury. Id. The factors to be considered in assessing quantum of damages for pain and suffering are severity and duration. Id.
In awarding general damages, the trier of fact is afforded great discretion. See La. C.C. art. 2324.1; Normand v. Jones, 12-508 (La.App. 5 Cir. 4/10/13), 115 So.3d 1, 5. An appellate court may only disturb a general damages award after an articulated examination of the facts discloses an abuse of that discretion. Jones, supra. The Louisiana Supreme Court has explained:
*711 The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, ... the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or In reduce the award.
Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
In the instant case, defendants argue that it was an abuse of the district court’s discretion to award general damages pursuant to a “cookie cutter” calculation method. This method has been referred to by the Louisiana Third Circuit as the unit-of-time method. “Under, this method, it is determined what the plaintiffs pain and suffering is worth in monetary terms for a given unit of time and then that figure is multiplied by the number of the said units of time contained in the expected duration of the pain and suffering.” Hebert v. Travelers Ins. Co., 245 So.2d 563, 565 (La.App. 3 Cir.1971), writ denied, 248 So.2d 332 (La.1971). “Thus a final figure is arrived at which supposedly represents a reasonable picture of what the amount of general damages should be.” Id.
We are cognizant that the Louisiana Supreme Court generally disapproves of the use of formulas in calculating damage awards. See D’Ambrosia v. Lang, 07-298 (La.App. 5 Cir. 4/29/08), 985 So.2d 800, 810 (citing McFarland v. Illinois C.R Co., 241 La. 15, 127 So.2d 183, 187 (1961)). However, the unit-of-time method is not unanimously rejected by Louisiana circuits.
For instance, this Court has affirmed the unit-of-time method for awards of general damages, while the First Circuit has rejected it. In Lee v. Briggs, 08-2120 (La.App. 1 Cir. 9/10/09), 23 So.3d 362, 365, the district court found the defendant liable for the injuries the plaintiff sustained in an automobile collision and awarded the plaintiff $10,000.00 in general damages for pain and suffering during four months of chiropractic treatment at $2,500.00 per month. See id.
On appeal, the three-judge majority of a five-judge panel found the district court ábused its discretion by using “a ‘cookie cutter’ approach in determining the amount of [general] damages[,]” failing to “tailor the damage award ... to fit the 112specific facts of the case.” Briggs, supra. In reaching this conclusion, the court found the evidence at trial did “not establish that [plaintiff] was actually in pain for four full months.” Id. The court also noted:
[B]ased on the medical evidence, [plaintiff] saw no other medical doctor other than the chiropractor. He did not testify that he took any over-the-counter pain medication and there is no evidence that he was ever prescribed any pain medication. The chiropractic records establish that the treatments were of a conservative nature, consisting of ultrasounds, manipulations, traction, and the application of cold packs.

Id.

Further noting that the frequency of plaintiffs treatments per week progressively declined, the court found it “difficult *712 to maintain that the amount of pain and suffering he was experiencing in the first six weeks (3 treatments a week) was the same as for the next four weeks (2 treatments a week), or for the last month (1 treatment a week).” Briggs, supra. Consequently, the appeal court reduced the general damage award from $10,000.00 to $6,225.00. Id.
Conversely, this Court has affirmed the unit-of-time method in awarding general damages. In Joseph v. Houston, 04-350 (La.App. 5 Cir. 10/12/04), 886 So.2d 1133, 1136, the district court found the defendant liable for the injuries the plaintiff sustained in an automobile collision and awarded the plaintiff $12,500.00 in general damages for pain and suffering during five months of chiropractic treatment at $2,500.00 per month.[5] The chiropractor originally recommended that the plaintiff receive treatment twice a week. Id. She began receiving this treatment in March, and did so regularly for three months, before her pain began to decrease. Id. at 1136, 1138. The frequency of her treatments then decreased as she continued into June and July. Id. She discontinued the treatment altogether in [ ^August, but resumed in September and October for a few visits. Id. at 1138. The district court limited the general damages award to the months of March through July. Id. On appeal, this Court affirmed the district court’s general damages award of $2,500.00 per month for pain and suffering during this five month period of chiropractic treatment. Id. See also Romano v. Jefferson Parish Sheriff’s Office, 13-803 (La.App. 5 Cir. 3/26/14), 138 So.3d 688, writ denied, 14-0700 (La.5/16/14), 139 So.3d 1028 (affirming the district court’s award of $48,000.00 in general damages for the plaintiffs pain and suffering during twenty-four months of treatment at $2,000.00 per month).
Given this Court’s espousal of the unit-of-time method in similar cases, we cannot find that the district court abused its great discretion by employing this formula to calculate Ms. Prejeant’s general damages award. Moreover, we find that the district court did not abuse its discretion in awarding Ms. Prejeant $2,000.00 per month for her soft tissue injuries, as this is consistent with general damage awards for similar injuries arising in this circuit. See, e.g., Ennis v. Sears, 08-235 (La.App. 5 Cir. 2/25/09), 9 So.3d 899, 904-05 (general damage award of $24,000.00 for a twelve-month soft tissue injury); Williams v. Roberts, 05-852 (La.App. 5 Cir. 4/11/06), 930 So.2d 121, 124 (general damage award of $7,500.00 for a three-month soft tissue injury).
This assignment of error, is without merit.
DECREE
For the foregoing reasons, we affirm the district court’s judgment finding defendants liable to plaintiff and its , award of general damages.

AFFIRMED

. The record contains different spellings of Mr. Smith’s first name;. At trial, Mr. Smith spelled his name “D-U-A-N-E.” This opinion uses this spelling.

. The dates of the treatment sessions are as follows: January 17, 24, 31; February 7, 29; March 6, 8, 13, 16, 20, 22; April 3, 13, 17, 24; May 1, 8, 15, 22, 29; June 5; July 3, 24, 27, 30; October 3, 15.

. Although neither party challenges the award of special damages, we note that the award of $5,105.00 exceeds the sum of its parts by $100.00.

. La. R.S. 32:81(A) provides in pertinent part: “The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway.”

. The district court awarded damages in the ■ total amount of $14,869.00; however, pursuant to the defendant’s insurer's motion for new trial, the total award was reduced to the policy limits of $10,000.00. See Houston, 886 So.2d at 1136.