CHEHARDY, C.J.
hln this personal injury action arising out of an automobile collision, defendants, the State of Louisiana and Mark Gerard Lovisa, appeal the district court’s March 3, 2016 judgment granting a directed verdict on the issue of liability in favor of plaintiff, Bridget Arlie Greene, and the court’s May 26, 2016 judgment awarding damages. For the reasons that follow, we reverse the May 3, 2016 judgment, vacate the May 25, 2016 judgment, and remand the matter for a new trial.
PROCEDURAL HISTORY
On January 11, 2013, Bridget Arlie Greene was driving on Clearview Parkway in Jefferson Parish when she was rear-ended by a pickup truck owned by the Louisiana Department of Agriculture and Forestry and driven by Mark Gerard Lovi-sa, a department employee. In turn, Ms. Greene’s vehicle rear-ended the vehicle in front of her driven by Ivan Huerta. Both Ms. Greene and Mr. Huerta sustained injuries.
On May 6, 2013, Ms. Greene filed a petition seeking damages for her injuries against Mr. Lovisa and the State of Louisiana through its Department of Agriculture and Forestry (“the State”).[1] On June 3, 2013, Mr. and Mrs. Huerta likewise filed a petition against these defendants seeking damages for injuries sustained as a result of the collision.[2] These two suits were consolidated in October 2013.
The matter proceeded to a jury trial on February 29, 2016. After the close of evidence on March 3, 2016, both Ms. Greene and defendants orally moved for directed verdicts on the issue of liability. After a brief recess, the court granted |2Ms. Greene’s motion and denied defendants’ in open court. Defense counsel objected.
The issue of damages proceeded to the jury. The jury was tasked with resolving two questions. First, “Was the negligence of Mark Gerard Lovisa a proximate cause of Bridget Arlie Greene’s injuries?” The jury answered yes. And second, “[I]n terms of dollars, how much in damages, if any, did Bridget Arlie Greene suffer as a result of this accident?” The jury was instructed to “state what sum of money, if any, would reasonably and fairly compensate Bridget Greene for each category of damages listed below.” The jury made the following findings: Past and future physical pain and suffering, $400,000; past and future mental pain and suffering, $400,000; past medical expenses, $520,875.66; future medical expenses, $310,000; loss of past earnings, $55,828; future earning capacity, *273 $626,642; and loss of enjoyment of life, $200,000. This totaled $2,613,345.66.
In the written judgment that followed on March 24, 2016, the court, pursuant to La. R.S. 13:5106(B)(1), reduced the jury’s award for the three categories of past and future physical pain and suffering, past and future mental pain and suffering, and loss of enjoyment of life from $1,000,000 to the statutory maximum of $500,000. This reduced the total award to $2,013,345.66, which the court adopted as its judgment. The court also ordered the award of future medical expenses ($310,000) to be paid from the Future Medical Care Fund in accordance with La.’ R.S. 39:1533.2, with medical care and related benefits to be paid directly to the provider as they are incurred pursuant to La. R.S. 13:5106(B)(3)(c), And the court assessed costs against defendants, to be determined in accordance with La. R.S. 13:5112(B).
On April 1, 2016, Ms. Greene filed a motion for new trial and/or judgment notwithstanding the verdict, seeking an award of judicial interest from date of judicial demand. That same date, defendants also filed a motion for new trial, | ¡¡arguing the court’s judgment of March 24, 2016 was contrary to the law and evidence. Following a hearing on these motions, the court rendered judgment on May 25, 2016, in which the court granted in part Ms. Greene’s motion for new trial/JNOV to amend the judgment to award judicial interest pursuant to La. R.S. 13:5112, denied defendants’ motion for new trial, and assessed costs in the amount of $21,192.65.[3] Also on May 25, 2016, the court issued its amended judgment in which the court deducted the amount of the award of future medical expenses ($310,000) from the jury’s award, as previously amended, to yield a total award of $1,703,345.66. The court further ordered legal interest to accrue at 6% per annum from the date- service is requested following judicial demand until the judgment is signed, plus legal interest accruing at the rate fixed by La. R.S. 13:4202 from the date of the judgment until paid, plus costs assessed in the amount of $21,192.65.
FACTS[4]
Mark Gerard Lovisa has been employed by the Louisiana Department of Agriculture and Forestry as a weights and measures inspector since 2010. In this position, which requires a lot of travel, Mr. Lovisa estimates that he spends at least half of every day in his state vehicle, a 2007 Dodge Ram 2500 pickup truck. Mr. Lovisa was driving this vehicle when the collision occurred on January 11, 2013; and it was not disputed that he was employed by the State and was acting within the course and scope of his employment at the time of the collision.
According to Mr. Lovisa, the streets were wet from a rainstorm earlier that day. He was driving southbound on Clear-view Parkway in the left lane and was approaching a red light at the intersection with Veterans Boulevard. He “was keeping a good distance” from the Nissan Pathfinder directly in front of him. As the traffic slowed at the red light, the Pathfinder slowed, and so did Mr. Lovisa. At |4the time he began to brake, he approximated he was traveling 35 miles per hour, “maybe less,” and was “maybe five or. six truck lengths,” behind the Pathfinder. When he observed the Pathfinder come to a complete stop, Mr. Lovisa estimated he had decelerated to about 10 or 15 miles *274 per hour. At this moment, Ms, Greene merged into the lane about one-and-a-half to two truck lengths in front of Mr, Lovisa and two to three truck lengths behind the Pathfinder. ,Mr. Lovisa “slammed” on his brakes and skidded into the back of Ms. Greene’s vehicle, a 2012 Suzuki. SX4. He explained “a few seconds” lapsed between her entering the lane and the collision.
Ms. Greene described the collision- differently. She testified that she was driving southbound on Clearview Parkway in the right lane when she realized she needed to get into, the left lane to make a left turn onto Veterans Boulevard. She flipped on her left blinker and looked to her left, where she saw Mr. Lovisa in the left lane. She made eye contact with him, waved at him, and pointed to the left lane, asking if he she could merge into the lane. She saw him nod his head affirmatively. Mr. Lovisa denied that he made eye contact with Ms. Greene or that he gestured for her to merge into his lane. But, according to Ms. Greene, Mr. Lovisa stopped to permit her to merge. She did, traveled three or four blocks, heard the squealing of tires, and was impacted from behind by Mr. Lovisa. This forced her into the rear of Mr. Huerta. She experienced whiplash from both impacts, though the initial one was more forceful. She immediately felt pain in her collarbone from the impact against her seat belt. She also had pain in her 'wrist and neck, and was experiencing shortness of breath. An ambulance was called and transported her to the emergency room at East Jefferson General Hospital. Ms. Greene testified -that Mr. Lovisa apologized for rear-ending her, but Mr. Lovisa denied this,
| i;Mr. Huerta testified that he was stopped at the red light when he heard squealing and a collision before he was impacted from behind, He experienced whiplash and sustained injuries to his neck and lower back,
Ms. Greene’s fiancé,[5] Michael Perdue, arrived at the scene. After checking on her, he spoke with Mr. Lovisa, who described "the collision to him. According to Mr. Perdue, Mr.- Lovisa stated that he waved Ms. Greene into his lane, but that when he slowed to come to a stop at the red light, he skidded on the wet roadway into the rear of her vehicle.
Deputy Zlatko Brujie with the Jefferson Parish Sheriffs Office also responded to the scene of the collision. At the time of trial, Deputy Brujie was retired after a 38-year career in law enforcement, 28 years of which he spent in the traffic division, investigating motor vehicle collisions. Deputy Brujie estimated that he had investigated roughly 16,000 collisions in his career, He was tendered and accepted as an expert in the field of motor vehicle collision investigation.
In his investigation of this scene, Deputy Brujie spoke with each of . the three drivers. His report reflected that Mr. Lovisa advised the officer that “he was southbound on Clearview Pkwy in left lane and as he had observed that traffic ahead of him had suddenly slowed, down he had applied his brakes but his vehicle... slid on wet roadway and before he was able to take any other evasive .action he had crashed into rear of [Ms. Greene’s vehicle].”
Deputy Brujic’s report reflected" that Ms. Greene advised him that “she was southbound on Clearview Pkwy in left lane and as she had started to slow down preparing to stop due to traffic ahead of her she was crashed into rear of her vehicle by [Mr. Lovisa’s vehicle] which impact had pushed her forward into rear of [Mr. *275 Huerta’s] stopped vehicle.” And the deputy’s report reflected that Mr. Huerta advised him that “he was southbound on Clearview Pkwy in left lane ^stopped due to traffic ahead of him when he had heard squealing tires, loud noise and then he was crashed into rear of his vehicle.” .
Deputy Brujic testified that neither Mr. Lovisa nor Ms. Greene informed him that she had merged into the lane immediately before the collision. He further explained that it is not likely for the tires ' of a braking vehicle that is travelling 10 or 15 miles per hour to squeal. The fact that Ms. Greene and Mr. Huerta heard squealing tires suggested to Deputy Brujic that Mr. Lovisa was inattentive, his vehicle was overloaded, or he was travelling at a speed higher than 10 or 15 miles per hour.
Deputy Brujic cited Mr. Lovisa for careless operation of a motor vehicle, a violation of La. R.S. 32:58. On January 30, 2013, the Jefferson Parish District Attorney charged him with this misdemeanor offense in the First Parish Court of Jefferson (Case No. F1937582); and on August 2,2013, Mr. Lovisa entered a plea of guilty to this charge pursuant to La. C.Cr.P. art. 894.
ASSIGNMENTS OF ERROR
On appeal, the State and Mr. Lovisa raise five assignments of error:
(1) The trial court erred in granting Ms. Greene’s motion, for directed verdict on the issue of liability because: (a) a .reasonable person could reach a contrary result and (b) the presumption of fault for a rear-end collision is rebuttable on proof of a lane change immediately preceding the collision.
(2) The trial court erred in not allowing . the jury to hear evidence of Ms. Greene’s prior injury in another automobile crash after Ms. Greene’s counsel opened the door to the admission of this evidence on direct examination by specifically asking Ms. Greene if she had been involved in an automobile accident before the accident sued upon herein.
(3) The trial court erred in allowing Dr. Larry Stokes to testify regarding a change in Ms. Greene’s condition after properly excluding Dr. Stokes’ supplemental report addressing the same subject matter as it was untimely and prejudicial to the defendants’ case.
(4) The trial court, after erroneously allowing Dr. Stokes to testify about a change in Ms. Greene’s condition without subsequent examination, then compounded its error by prohibiting defendants’ expert. Dr. Robert, from testifying regarding his opinion of Ms. Greene’s condition after his examination of her.
b(5) The trial court erred in denying the defendants’ motion for new trial stating that the court’s judgment was not contrary to the law • and evidence at trial, specifically regarding the amounts awarded for future medical expenses.
DISCUSSION

Assignment of Error One

In defendants’ first assignment of error, they argue that the district court erred in granting Ms. Greene’s motion for directed verdict on-the issue of liability.- Because we find merit to this argument, we. pretermit discussion, of, defendants’ remaining assigned errors.
A motion for a directed verdict is a procedural device available in jury trials for purposes of judicial economy. Baudy v. Travelers Indem. Co. of Conn., 13-832 (La. *276 App. 5 Cir. 04/09/14), 140 So.3d 125, 131. The motion should be granted when, after considering all of the evidence in the light and with all reasonable inferences most favorable to the movant’s opponent, it is clear that the facts and inferences point so overwhelmingly in favor of granting the verdict, that reasonable jurors could not arrive at a contrary result. Id. On the other hand, the motion should be denied and the case submitted to the jury, if evidence is produced in opposition to the motion that has such quality and weight that reasonable and fair-minded men, exercising impartial judgment, might reach different conclusions. Id.
Louisiana courts have recognized that conflicting testimony and credibility determinations generally should not be resolved by means of a directed verdict. See Reilly v. Dynamic Expl., Inc., 571 So.2d 140, 144 (La. 1990) (“Questions of credibility should not be resolved by a directed verdict.”); Romano v. Lomasney, 423 So.2d 787, 790 (La. App. 4 Cir. 1982) (“[W]hen witnesses give conflicting testimony, the Trial Judge is prohibited from rendering a directed verdict based on his evaluation of their credibility [. ] ”)
IsFor example, the Louisiana Third Circuit reversed a directed verdict in favor of defendants in a personal injury case arising out of an automobile collision when conflicting testimony had been offered at trial regarding the collision. See Hebert v. BellSouth Telecomms., Inc., 01-00223 (La. App. 3 Cir. 6/6/01), 787 So.2d 614. In its assessment of this conflicting testimony on appeal, the Third Circuit found the evidence supporting the defendants’ version of the collision did not so overwhelmingly point to one conclusion that reasonable jurors could not have reached a verdict in favor of the plaintiff. Id. at 618. Because “reasonable persons could disagree as to whether the defendants should bear any liability,” the court determined “that the trial court erred when it improperly took the duty of determining credibility away from the jury.” Id. at 619.
Similarly, in another automobile collision case, the Third Circuit reversed the district court’s ruling granting a directed verdict in favor of the plaintiff against one of the defendants when conflicting testimony at trial led the appellate court to conclude that reasonable jurors could have reached a contrary result. See Lewis v. State Farm Mut. Auto. Ins., 499 So.2d 656, 658 (La. App. 3 Cir. 1986).
In determining whether or not a motion for a directed verdict should be granted, the trial court has much discretion. Baudy v. Travelers Indem. Co. of Conn., 13-832 (La. App. 5 Cir. 4/09/14), 140 So.3d 125, 131. On appeal, the standard of review is whether, viewing the evidence submitted, reasonable jurors could not reach a contrary result. Id. Moreover, the propriety of a directed verdict must be evaluated in light of the substantive law governing the claims. Id.
 Under the substantive law governing this case, liability is allocated pursuant to a pair of rebuttable legal presumptions. In a rear-end collision, there is a well-established presumption that the following motorist breached the standard of care set forth in La. R.S. 32:81 and was negligent. Prejeant v. Gray Ins. Co., 15-87 (La.App. 5 Cir. 9/23/15), 176 So.3d 704, 709. However, this presumption is rebutted [awith proof that the lead vehicle negligently created a hazard which the following vehicle could not reasonably avoid. Id. For instance, a driver who changes lanes without first determining that the move can be completed safely and then is struck from the rear by a following car cannot rely on the rear-end collision presumption to shift the burden to the following driver. Id. Indeed, the law places a greater bur *277 den of care on a motorist changing lanes than on a motorist proceeding at a lawful rate of speed in a marked lane. Id. When there is a lane change immediately preceding a collision, the burden is on the motorist changing lanes to show that she first ascertained that the movement was being made safely. Id. (citing La. R.S. 32:79(1)).
The two key eyewitnesses to the collision, Mr. Lovisa and Ms. Greene, offered conflicting testimony as to how it occurred. Mr. Lovisa testified that Ms. Greene without warning merged into his lane about one-and-a-half to two truck lengths in front of him. Traveling at approximately 10 to 15 miles per hour, he “slammed” on his brakes and skidded on the wet roadway into the rear of Ms. Greene’s vehicle. He estimated that “a few seconds” lapsed between her entering the lane and the collision.
Ms. Greene described a different version of events. She testified that she used her left blinker and got permission from Mr. Lovisa to merge into the lane ahead of him. Mr. Lovisa denied this. She then traveled three or four blocks before she heard the squealing of tires and was impacted in the rear by Mr. Lovisa. The squealing of tires was also corroborated by the testimony of Mr. Huerta and the police report.
In reconciling these conflicting accounts, the court determined the evidence overwhelmingly supported Ms. Greene’s account such that reasonable jurors could not have reached a contrary result, ie., that Ms. Greene was either fully or | ^comparatively at fault by negligently creating a hazard which Mr. Lovisa could not reasonably avoid. The court offered the following reasons for its conclusion:
Both parties made a motion for a directed verdict. I took the time to review the party’s testimony as it concerns the cross motions. And initially, at first glance, the competing motions would have suggested to me that there was, in fact, facts in dispute.
However, the Court reviewed all of Mr. Lovisa’s testimony that I took pretty good notes on. His own testimony was that there were five to six truck lengths between him and Mr. Huerta’s vehicle at the time that Miss Greene changed lanes. However, it was uncontroverted by all parties and Mr. Huerta and the police officer that at impact Miss Greene’s vehicle was immediately behind Mr. Huerta’s vehicle, which means according to Mr. Lovisa’s testimony, she had to have already traveled several car lengths in Mr. Lovisa’s lane prior to impact.
That being said, the only logical conclusion is that she had, in fact, entered the lane safely. That coupled with Mr. Lovisa’s admission and Mr. Huerta’s testimony about brakes squealing further support that conclusion.
If.. .the Court was to even consider that Miss Greene had cut him off, then Mr. Lovisa would have impacted Miss Greene’s vehicle not directly behind Mr. Huerta’s vehicle, but, in fact, some distance prior to that, which was not at all what Mr. Lovisa’s testimony at trial was. There was no evidence that was presented to the Court that his vehicle was physically incapable of stopping in the truck lengths that he described or at the rate of speed that he described.
And so, therefore, the Court has to treat Mr. Lovisa’s statements and testimony to this Court as judicial admissions against his own interest regarding liability because the facts as he described them could only result in the determination that Miss Greene entered the lane safely for several ear lengths prior to impact, which means she did, in fact, enter the lane safely. And when traffic stopped, Mr. Lovisa did not.
*278 And so, therefore, I am going to grant the motion for directed verdict as to that issue and I am going to deny the defense’s motion for a directed, verdict.
The crux of the court’s reasoning here is that because Mr. Lovisa’s testimony supports the inference that Ms. Greene traveled several car lengths prior to impact, the “only logical conclusion” is that she had entered the lane safely. That certainly is a logical conclusion, but upon our review of the record, we are not convinced it is the only logical conclusion.
Like Hebert and Lewis above, the evidence here includes conflicting testimony, resolution of which requires the evaluation of credibility. And in. In evaluating credibility when confronted with conflicting testimony, the trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Thus, in resolving the conflict between Ms. Greene’s assertion that she obtained permission from Mr. Lovisa to merge into his lane and Mr. Lovisa’s assertion that she did not, a reasonable person could accept as credible Mr. Lovisa’s testimony and reject Ms. Greene’s, or vice versa.
In turn, these evaluations of credibility greatly influence the factual inferences drawn from the testimony, where the nuances in a witness’s demeanor and tone of voice bear so heavily upon the listener’s understanding and belief in what is said. See Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). Here, Ms. Greene’s and Mr. Lovisa’s testimonies are not comprised of hard and fast figures, but consist of approximated ranges of speed, distance, time, and other factors. And from such imprecise variables, reasonable persons may draw a range of different factual inferences.
•Given the variety of reasonable conclusions supported by the array of figures and conflicting testimony offered at trial, we find the evidence leaves considerable room for reasonable persons to disagree as to how the collision occurred. Sorting through this evidence and making determinations of credibility are tasks uniquely suited for the collective judgment of a jury. In this case, though, by granting the directed verdict, the judge substituted her singular judgment for the jury’s and pronounced hers as the “only logical” conclusion supported by the evidence. This usurpation of the jury’s .fact-finding role- is reflected in the court’s reasoning quoted above. In our view, this does not demonstrate that the evidence was so overwhelming that reasonable persons could not reach a contrary result. Rather, this is a quintessential illustration of the assessing, weighing, and inference-drawing that is the process of fact-finding. The only problem is that the. fact finder was not permitted to undertake this process.
|1gAfter considering all of the evidence in the light and with all reasonable inferences most favorable to the State and Mr. Lovir sa, we do not find that the facts and inferences point so overwhelmingly to a verdict in favor of Ms. Greene that reasonable jurors could not have found that Ms. Greene was either fully or comparatively at fault. Accordingly, we conclude that the district court erred in granting Ms. Greene’s motion for a directed verdict.
Ordinarily, when an appellate court finds legal error in a judgment and the record is complete, the practice has been for the appellate court to conduct an independent review and fender judgment on the merits. But- when the weight of the evidence is so nearly equal that a first-hand view of witnesses is essential to a fair resolution of conflicting evidence, the case should be remanded for a new trial. Matranga v. Par. Anesthesia of Jefferson, LLC, 14-448 (La.App. 5 Cir. 5/14/15), 170 So.3d 1077, *279 1099, writ denied, 15-1143 (La. 9/18/15), 178 So.3d 148; Ragas v. Argonaut Southwest Ins. Co., 388 So.2d 707, 708 (La. 1980); Gonzales v. Xerox Corporation, 254 La. 182, 320 So.2d 163, 165-66 (1975).
The error we find here is structural, in that the jury, not the court, should have determined the issue of liability, contingent as it is upon resolution of conflicting testimony and- credibility determinations. Because a panel, of three judges is in no better position to evaluate the credibility of witnesses and resolve conflicts in the evidence, .we conclude that rendering judgment on the record does not cure -the structural defect and that this case must be remanded for a new trial.

Motion to Strike

In response to defendants’ reply brief filed in this Court, Ms. Greene moved to strike an issue raised for the first time therein. This Court referred the motion to the merits. In light of our ruling herein, Ms. Greene’s motion to strike is denied as moot.
J^DECREE
For the foregoing reasons, we reverse the district court’s March 3, 2016 judgment granting Bridget Arlie Greene’s motion for a directed verdict on the issue óf liability, vacate the court’s .May 25, 2016 judgment awarding damages, and remand this matter for a new trial. Ms. Greene’s motion to strike is denied as moot.
REVERSED; VACATED; REMANDED

. Ms. Greene initially named as a defendant The Southern Association of State Departments of Agriculture, but later dismissed this party without prejudice in June 2013.

. Mrs. Huerta raised a loss of consortium claim.

. The Huertas dismissed their claims with prejudice on May 19, 2016 after reaching a settlement agreement with defendants.

. Because we find reversible error on the issue of liability, the medical evidence adduced at trial is not included in this opinion.

. Ms. Greene and Mr, Perdue subsequently married in 2014.