787 So.2d 614 (2001)
Cynthia B. HEBERT
v.
BELLSOUTH TELECOMMUNICATIONS, INC., et al.
No. 01 00223-CA.
Court of Appeal of Louisiana, Third Circuit.
June 6, 2001.
*615 Kevin Roy Rees, Attorney at Law, Abbeville, LA, Counsel for Cynthia B. Hebert.
Carl William Robicheaux, Attorney at Law, Abbeville, LA, Counsel for BellSouth Telecommunications, Inc.
Angela P. McCulloch, State Employees Group Benefits, Baton Rouge, LA, Counsel for State Employees Group Benefits.
Court composed of ULYSSES GENE THIBODEAUX, JOHN D. SAUNDERS, and MICHAEL G. SULLIVAN, Judges.
SAUNDERS, Judge.
On appeal, Ms. Cynthia Hebert asserts that the trial court erred in granting Bell-South Telecommunications, Inc.'s (Bell-South) motion for directed verdict. For the reasons that follow, we reverse.

FACTS
This suit arose out of an accident which happened on October 4, 1996. The accident took place on Louisiana Highway 14, commonly referred to as the Abbeville By-Pass, 230 feet east of its intersection with John Hardy Drive. The By-Pass is a four lane, undivided highway, with two lanes running east and two lanes running west. There is a traffic control light at the intersection of the By-Pass and John Hardy Drive. The Gate Shopping Center lies on the southwest corner of this intersection. The Gate has two entrance/exit driveways connecting it to the By-Pass.
On the day of the accident, at approximately 11:00 a.m., Mrs. Kristi Schexnayder LeBlanc was waiting to turn left out of the westward most driveway of the Gate. In order to turn left, Mrs. LeBlanc would have to cut across the eastbound lanes of the By-Pass. The traffic light was red for traffic along the By-Pass. Mr. Timothy Boudreaux, who was driving a BellSouth van and who was traveling eastward in the outside lane of the By-Pass, stopped before the driveway where Mrs. LeBlanc was waiting. Two cars were stopped at the light ahead of him.
Both Mrs. LeBlanc and Mr. Boudreaux testified that Mr. Boudreaux stopped at least 230 feet from the intersection. They also agreed that after the light changed to green, Mr. Boudreaux did not immediately move forward. Both parties said he remained stopped for approximately ten seconds.
What happened next was disputed at trial. Mrs. LeBlanc testified that Mr. Boudreaux waved her to cut across his lane of travel. Initially, she did not do so because she was unable to see if any vehicles were traveling in the eastbound, inside lane because the BellSouth van blocked her vision. Mrs. LeBlanc testified that she made eye contact with Mr. Boudreaux and asked, "are you sure?" According to her testimony, Mr. Boudreaux looked into his side mirror and motioned for her to cross again. Then, she inched up closer to him, and asked again, "are you sure?" In response, Mr. Boudreaux checked his side mirror again, and waved her across a third time. As she moved forward, crossing the outside, eastbound lane, and entering the inside lane, Ms. Hebert's vehicle struck her vehicle.
Mr. Boudreaux denies ever waving Mrs. LeBlanc. He admits he stopped before *616 the Gate driveway. He testified that he did so to avoid blocking the intersection.
Officer Christopher Mack, who investigated the accident, reported that Mr. Boudreaux told him at the scene of the accident that he stopped to let Mrs. LeBlanc pull out and that he looked in his side mirror to make sure the left lane was clear.
At the time of the accident, Ms. Cynthia Hebert was traveling from Hainam Chinese Restaurant back to her office at the Department of Motor Vehicles. Initially, she was traveling in the eastbound, outside lane of the By-Pass. As Ms. Hebert approached the green light at the intersection of the By-Pass and John Hardy Drive, she testified she noticed at least four or five cars ahead of her were stopped in the outside, eastbound lane. Thinking there was a wreck, she testified that she slowed and switched lanes. There were no stopped cars in the inside, eastbound lane. As she approached the BellSouth van, at the head of the line of cars in the outside, eastbound lane, Mrs. LeBlanc pulled into Ms. Hebert's lane of travel, and their cars collided. Because her view was obstructed by the BellSouth van, Ms. Hebert testified that she was unable to see Mrs. LeBlanc. Likewise, Mrs. LeBlanc testified that because of the van's position, she was unable to see Ms. Hebert in time to avoid the accident.

PROCEDURAL FACTS
Cynthia Hebert filed suit on March 14, 1997, seeking damages for physical and mental injuries as a result of the October 4, 1996, automobile accident. In her suit, she named as defendants Kristi Schexnayder LeBlanc, her insurer, BellSouth, its employee Timothy Boudreaux, and her own uninsured motorist carrier. Before trial, all of the defendants settled with Ms. Hebert except BellSouth and Mr. Timothy Boudreaux. The trial of this matter began on Monday, March 22, 2000, and concluded on May 26, 2000. After Ms. Hebert rested, the defendants moved for a directed verdict that the trial court granted. The trial court signed the judgment on August 28, 2000. From this judgment, Ms. Hebert filed the instant appeal.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal, Ms. Hebert asserts the following three assignments of error:
1. The trial court erred in granting a directed verdict finding no liability on the part of Mr. Boudreaux, a waving motorist, when conflicting testimony existed regarding his actions such that reasonable minds could reach different conclusions.
2. The trial court erred in granting a directed verdict the testimony revealed Mr. Boudreaux created a hazard by stopping on the By-Pass, thereby blocking traffic and obscuring the vision of oncoming motorists.
3. The trial court erred when it evaluated the credibility of the witnesses, which is improper in deciding a motion for directed verdict.

STANDARD OF REVIEW
A motion for directed verdict is provided for in La.Code Civ.P. art. 1810, which states:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have *617 moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.
The applicable standard of review for such motions is found in Busby v. St. Paul Insurance Co., 95-2128, pp. 16-17 (La. App. 1 Cir. 5/10/96); 673 So.2d 320, 331, writ denied, 96-1519 (La.9/20/96); 679 So.2d 443, which states:
A trial court has much discretion in determining whether or not to grant a motion for directed verdict. New Orleans Property Development, Ltd. v. Aetna Casualty and Surety Company, 93-0692 (La.App. 1st Cir.4/8/94); 642 So.2d 1312, 1315; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 and 92-1545 (La.App. 1st Cir.3/11/94); 634 So.2d 466, 478, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094; Barnes v. Thames, 578 So.2d 1155, 1162 (La.App. 1st Cir.), writ denied, 577 So.2d 1009 (La.1991). A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478; Barnes, 578 So.2d at 1162. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478.
On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478. Furthermore, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiffs claims. New Orleans Property Development, Ltd., 642 So.2d at 1315; Belle Pass Terminal, Inc., 634 So.2d at 478.
Under this legal standard, the question is not whether Ms. Hebert has proven her case against the defendants by a preponderance of the evidence, but rather, upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of Ms. Hebert against the defendants. Villaronga v. Gelpi Partnership # 3, 536 So.2d 1307 (La.App. 5 Cir.1988), writs denied, 540 So.2d 327, 329 (La.1989).

BELLSOUTH
In her first two assignments of error, Ms. Hebert asserts that the trial court erred in granting a directed verdict in favor of Mr. Boudreaux and his employer, BellSouth. Specifically, Ms. Hebert contends that the trial court erred in granting a directed verdict finding no liability on the part of Mr. Boudreaux, a waving motorist, when conflicting testimony existed regarding his actions such that reasonable minds could reach different conclusions, and when the testimony revealed Mr. Boudreaux created a hazard by stopping on the By-Pass, thereby blocking traffic and obscuring the vision of oncoming motorists.

Waving Motorist
In her suit, Ms. Hebert contended that BellSouth is liable to her because of Mr. *618 Boudreaux's actions in signaling to Ms. LeBlanc to cross traffic. The duty of a waving driver is set forth in Lennard v. State Farm Mutual Automobile Insurance Co., 26,396, p. 4 (La.App. 2 Cir. 1/25/95); 649 So.2d 1114, 1118, which states in pertinent part:
Any person who waves or signals to indicate the way is clear for a motorist to turn has a duty to exercise reasonable care in doing so. See Martin v. New Orleans Public Service, 553 So.2d 994, 995-96 (La.App. 4th Cir.1989). However, before any person can be assessed with fault for failing to exercise reasonable care in waving or signaling, the party alleging the waver's negligence must prove the following: (1) the "waver" did indeed make a signal for the motorist to cross, (2) the "waver" intended to convey that he had checked for traffic, (3) the "waver" intended to indicate that it was entirely safe to cross the street, (4) the motorist reasonably relied on the signal in decid[ing] to cross, and (5) these circumstances, taken as a whole, caused the accident. Id.

In the instant case, the witnesses gave conflicting testimony regarding the actions of Mr. Boudreaux, the BellSouth driver. Both Mrs. LeBlanc and Mr. Boudreaux testified that Mr. Boudreaux stopped for at least ten seconds approximately 230 feet from the traffic light at the intersection of the By-Pass and John Hardy Drive. Both agreed that Mr. Boudreaux remained stopped despite the fact that the light turned green and there was no impediment to his forward movement.
The parties disagree, however, as to what happened while Mr. Boudreaux was stopped during this ten second interval. At trial, Mr. Boudreaux denied that he waved for Mrs. LeBlanc to move forward. Mr. Boudreaux explained his failure to proceed forward by discussing what he had learned in driving school. Mr. Boudreaux testified that he had been instructed in driving school not to block an intersection.
Mrs. LeBlanc's testimony conflicted with Mr. Boudreaux's testimony. Mrs. Le-Blanc's testimony indicated that Mr. Boudreaux waved her forward, and her testimony meets all five parts of the Lennard test. According to Mrs. LeBlanc, Mr. Boudreaux signaled her to cross on three separate occasions during the ten second interval. She saw him check his side mirror for traffic. She made eye contact with him, and she questioned him regarding whether he was sure she could make a left turn. Under the circumstances, it appears reasonable that Mrs. LeBlanc relied on Mr. Boudreaux's actions, as he entirely blocked her view of oncoming traffic. Finally, it appears that under these circumstances, Mr. Boudreaux's actions, and Mrs. LeBlanc's reliance on those actions, caused the accident.
A directed verdict should only be granted when the facts and inferences point so strongly in favor of one party that the court believes reasonable persons could not reach a contrary verdict. Hastings v. Baton Rouge Gen. Hosp., 498 So.2d 713 (La.1986). A directed verdict is appropriate only when the evidence overwhelmingly points to one conclusion. Id. Our review of the record has revealed significant evidence, specifically Mrs. Le-Blanc's testimony, indicating that Mr. Boudreaux was waving for Mrs. LeBlanc to make a left turn in front of him. Although the record also contains testimony to the contrary by Mr. Boudreaux, this testimony is not so weighty that reasonable persons may not have reached a verdict in favor of Ms. Hebert against the defendants. Accordingly, we find that the trial judge erred in granting the defendants a directed verdict regarding this issue.

*619 Blocking Traffic/Obscuring Vision

Ms. Hebert also argues that the trial court erred in granting the directed verdict in favor of the defendants because the testimony taken at trial revealed Mr. Boudreaux created a hazard by stopping on the By-Pass, thereby blocking traffic and obscuring the vision of oncoming motorists.
Under Louisiana law, a motorist has a duty not to cause an obstruction to the normal flow of traffic on a highway or to adequately warn approaching motorists of any obstructions he does cause. State Farm Mut. Auto. Ins. Co. v. South Cent. Bell Tel. Co., 359 So.2d 1318 (La.App. 4 Cir.1978). This duty is designed to prevent the risk of confused or inattentive drivers colliding with such obstructions. Id.; Thibodeaux v. Lock Clinic, 303 So.2d 570 (La.App. 4 Cir.1974). Whether or not a motorist has complied with this duty is a question of fact depending on the circumstances of the case. Id.
Aside from whether Mr. Boudreaux waved Mrs. LeBlanc forward, it is undisputed that he remained stopped on a busy four-lane highway for at least ten seconds, and during that ten second time period, there was never any impediment to his forward motion. According to his testimony, as well as that of Mrs. LeBlanc, there were at least two to three cars behind him during this time period. As she approached the scene, Ms. Hebert testified there were "five (5), maybe six (6) cars" stopped behind the BellSouth van.
Again, after a review of the record before us, we find that, even in the absence of any evidence concerning whether Mr. Boudreaux waved Mrs. LeBlanc forward, the trial court erred in granting Bell-South's motion for directed verdict. Our review of the record reveals testimony that Mr. Boudreaux stopped for at least ten seconds. The testimony also shows that Mr. Boudreaux was stopped long enough for a line of cars to have formed behind him. In addition, Mrs. LeBlanc testified that she could not see the left lane of traffic on the By-Pass because Mr. Boudreaux had stopped his van before the driveway of the Gate. Based on the evidence of Mr. Boudreaux's actions in obstructing traffic, we find that reasonable persons could have differing views of the evidence. Accordingly, we find that the trial judge erred in granting BellSouth a directed verdict in light of the evidence of Mr. Boudreaux's obstruction of traffic.

Credibility
In her third assignment of error, Ms. Hebert urges that the trial court erred when it evaluated the credibility of the witnesses in determining whether to grant the motion for directed verdict. Evaluating credibility is one of the primary duties of a jury, and the trial court may not take this duty from the jury unless the party opposing verdict has failed to produce significant evidence upon which reasonable and fair-minded persons could disagree. Royal Ins. Co. v. Fireman's Fund Ins. Co., 532 So.2d 372 (La.App. 3 Cir.1988). As we have found that reasonable persons could disagree as to whether the defendants should bear any liability, we find that the trial court erred when it improperly took the duty of determining credibility away from the jury.

DECREE
Based on the foregoing discussion, we reverse the decision of the trial court and we remand for further proceedings consistent with this opinion. All costs are assessed against Defendant-Appellees, Bell-South and Mr. Boudreaux.
REVERSED AND REMANDED.